# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

DEANNA B.,[1]                    :    Case No. 1:22-cv-00604
                                 :
     Plaintiff,               :    District Judge Matthew W. McFarland
                                 :    Magistrate Judge Caroline H. Gentry
vs.                              :
                                 :
COMMISSIONER OF THE SOCIAL       :
SECURITY ADMINISTRATION,         :
                                 :
     Defendant.               :

## REPORT AND RECOMMENDATION[2]

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in October 2020. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, it is

---

[1] See S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] See 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendations within the specified time period.

recommended that the Court REVERSE the Commissioner's decision and REMAND for further proceedings.

## I.    BACKGROUND

Plaintiff asserts that she has been under a disability since April 10, 2019. At that time, she was forty-eight years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[3] Plaintiff subsequently turned age fifty and changed her age category to a "person closely approaching advanced age." *See* 20 C.F.R. § 404.1563(d). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-2 at PageID 43-65), Plaintiff's Statement of Errors ("SE," Doc. No. 8), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 10), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 11). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any

---

[3] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).  This standard "presupposes that there is a zone of choice within which

3

the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III. FACTS

### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1:     Plaintiff has not engaged in substantial gainful activity since April 10, 2019, the alleged onset date.

Step 2:     She has the severe impairments of status post-bilateral knee
            replacement, lumbar degenerative disc disease, depression, and post-
            traumatic stress disorder.

Step 3:     She does not have an impairment or combination of impairments
            that meets or equals the severity of one in the Commissioner's
            Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:     Her residual functional capacity (RFC), or the most she can do
            despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276
            F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20
            C.F.R. § 404.1567(b), subject to the following limitations: [S]he can
            occasionally climb stairs and ramps, with no climbing of ladders,
            ropes, or scaffolds, occasionally balance as defined in the Selected
            Characteristics of Occupations of the Dictionary of Occupational
            Titles, and occasionally stoop, kneel, crouch, and crawl. [Plaintiff]
            must avoid concentrated exposure to dangerous machinery and to
            unprotected heights. [Plaintiff] can have no requirement to maintain
            a production-rate pace.

            She is unable to perform any of her past relevant work.

Step 5:     Considering Plaintiff's age, education, work experience, and RFC,
            there are jobs that exist in significant numbers in the national
            economy that she can perform.

(Decision, Doc. No. 7-2 at PageID 45-64.) These findings led the ALJ to conclude that

Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at

PageID 65.)

## B.     State Agency Psychological Consultants

State agency psychological consultant Kari Kennedy, Psy.D. completed a mental

residual functional capacity (RFC) assessment in February 2021. (AR, Doc. No. 7-3 at

PageID 117-118, 121-24.) Dr. Kennedy found mild impairment in the "B Criteria" areas

of understanding, remembering, or applying information and adapting or managing

oneself. (*Id.* at PageID 117.) She found no impairment in the area of interacting with

5

others and moderate impairment in the area of concentrating, persisting, or maintaining pace. (*Id.*) In terms of functional limitations, Dr. Kennedy opined:

> The evidence suggests that [Plaintiff] can understand, remember, and carry out detailed, but not complex tasks. [Plaintiff] can relate on a superficial and ongoing basis with coworkers and supervisors. [Plaintiff] can attend to tasks for a sufficient period to complete tasks. [Plaintiff] can manage the stresses involved with detailed work-related tasks.

(*Id.* at PageID 124.) Donna Unversaw, Ph.D. reviewed the updated record at the reconsideration level in June 2021. (*Id.* at PageID 153-57.) Dr. Unversaw indicated that she affirmed Dr. Kennedy's February 2021 assessment. (*Id.*)

The ALJ did not specifically address the persuasiveness of the state agency psychological consultants' opinions. (Decision, Doc. No. 7-2 at PageID 62-63.) Instead, the ALJ merely summarized the opinions of the state agency medical and psychological consultants. (*Id.*) The ALJ combined his analyses of the medical and psychological opinions and concluded that the "state agency determination is consistent with and supported by the record in part . . . ." (*Id.* at PageID 63.) He adopted the physical limitations for a range of light work with postural and environmental limitations that the state agency medical consultants assessed. (*Id.*). But the ALJ did not adopt the mental limitations assessed by the psychological consultants because, he summarily concluded, "the record does not support further mental limitation, other than limiting [Plaintiff] to no work that requires a production-rate pace, given her anxiety and any difficulties with concentration or drowsiness she may experience." (*Id.*)

## IV.    LAW AND ANALYSIS

Plaintiff asserts that the ALJ failed to properly evaluate the opinions of the state agency psychological consultants for consistency and supportability as required by 20 C.F.R. § 404.1520c. (SE, Doc. No. 8 at PageID 1426.) For the reasons discussed below, Plaintiff's assertion is well-taken and the ALJ's decision should be reversed.

### A.    Applicable Law

Social Security regulations require ALJs to adhere to certain standards when evaluating medical opinions. ALJs must analyze the persuasiveness of "***all*** of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [her] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed her claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and

(5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

Significantly, because the first two factors—supportability and consistency—are the "most important" ones, the ALJ "*will* explain" how he or she considered them. 20 C.F.R. § 404.1520c(b)(2) (emphasis added).[4] As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

**B.    The ALJ Reversibly Erred When Evaluating The Findings Of The State Agency Psychological Consultants.**

The ALJ erred by failing to address the supportability of the State agency psychological consultants' opinions, as is required by the applicable regulations. Additionally, the ALJ's findings regarding the consistency of the consultants' opinions are not supported by substantial evidence. For both of these reasons, the undersigned Magistrate Judge recommends that the Court reverse and remand the ALJ's decision.

---

[4] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

### 1. *The ALJ failed to consider the supportability of the state agency psychologists' opinions.*

The ALJ was required to explain his analysis of the supportability and consistency factors when considering the persuasiveness of the state agency psychological consultants' opinions. 20 C.F.R. § 404.1520c(b)(2). Supportability requires the ALJ to examine "objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c(c)(1). Consistency requires the ALJ to consider "the evidence from other medical sources and nonmedical sources." 20 C.F.R. § 404.1520c(c)(2). The ALJ appeared to conflate these requirements and did not address the supportability factor. The Court therefore concludes that the ALJ's decision did not comply with Section 404.1520c(b)(2).

As noted above, the ALJ combined his analyses of the state agency medical and psychological consultants' opinions. (Decision, Doc. No. 7-2 at PageID 63.) The ALJ concluded that the psychological opinions are "**consistent with and supported by the record in part**; however, the record does not support further mental limitation, other than limiting [Plaintiff] to no work that requires a production-rate pace, given her anxiety and any difficulties with concentration or drowsiness she may experience." (*Id.*)

Relying on the emphasized statement, Defendant argues that the ALJ addressed both supportability and consistency in his decision (Mem. In Opp., Doc. No. 10 at PageID 1442.) But in fact he did not do so. To analyze the supportability factor required by 20 C.F.R. § 404.1520c(c)(1), the ALJ was required to consider the psychological consultants' own supporting explanations and summaries of the evidence. However, the

9

ALJ's reference to "the record" appears to mean evidence in the record from other medical and nonmedical sources, which is considered under the consistency factor. The ALJ's failure to consider the supportability factor when discounting the psychological opinions is a procedural violation that warrants reversal.

2. **The ALJ's consistency analysis is unsupported by substantial evidence.**

Although the ALJ concluded that the state agency psychological consultants' opinions were "consistent with and supported by the record in part," he did not adopt their suggested mental limitations. (Decision, Doc. No. 7-2 at PageID 63.) Instead, the ALJ concluded that "the record does not support further mental limitation, other than limiting [Plaintiff] to no work that requires a production-rate pace, given her anxiety and any difficulties with concentration or drowsiness she may experience." (*Id.*) Construing this statement as constituting the ALJ's consistency analysis, the ALJ's conclusions are unsupported by substantial evidence.

Significantly, the ALJ's one-sentence explanation for his conclusions about the psychological evidence—namely, his reference to "anxiety and any difficulties with concentration or drowsiness [plaintiff] may experience"—only explains his decision to include a mental limitation in the RFC for no work that requires a production-rate pace. (AR, Doc. No. 7-2 at PageID 63.) This statement does not explain, directly or indirectly, the ALJ's conclusion that "the record does not support further mental limitation." (*Id.*) Nor does it provide any justification for declining to adopt the specific mental limitations recommended by the state agency psychological consultants. (*Id.*)

Defendant contends that the ALJ's admittedly "concise" explanation is supported by substantial evidence and that "the ALJ's entire decision allows for meaningful judicial review." (Mem. In Opp., Doc. No. 10 at PageID 1442, 1446.) According to Defendant: "[T]he ALJ explained how the evidence supported the [RFC] during his Finding No. 4 discussion and his Finding No. 3 discussion of the "paragraph B" criteria." (*Id.* at PageID 1443.)

The Sixth Circuit has held that meaningful judicial review exists—even if the ALJ provided only a cursory or sparse analysis—if the ALJ made sufficient factual findings elsewhere in the decision that support his conclusion. *See Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the decision to affirm the ALJ's step three analysis, and finding no need for the ALJ to "spell out every fact a second time"); *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365-66 (6th Cir. 2014) (finding that the ALJ made "sufficient factual findings elsewhere in his decision to support his conclusion at step three). This principle applies to opinion evidence analysis. *E.g., Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016). The Court will therefore consider the ALJ's factual findings elsewhere in the decision to consider whether his evaluation of the consistency of the state agency psychological consultants' opinions is supported by substantial evidence.

When the ALJ evaluated Plaintiff's mental impairments under the "paragraph B" criteria at Step Three, he found that Plaintiff has no limitation in the ability to interact with others. (Decision, Doc. No. 7-2 at PageID 48.) The ALJ explained:

> She reported spending very little time with others, noting she goes to her sister's home on a regular basis, monthly (Ex. 4E/5). She reported sometimes she can have problems getting along with friends, family, neighbors, and others, but reported she gets along "great" with authority figures and usually has always been the "teacher's pet" (Ex. 4E/6-7). [Plaintiff] reported her depression makes her not want to do much and when she is home from work and in pain, she wants to put on her pajamas and not go anywhere (Ex. 4E/6). [Plaintiff's] sister reported [Plaintiff's] interaction with her daughter is "very dysfunctional" and she reported [Plaintiff] has "destroyed" her relationships with their other sister, their step-mother, and her three adult nieces, with the record reflecting an issue between the sisters as discussed in counseling (Ex. 3E/3, 8). The evidence supports no limitation in this area.

(*Id.*) The ALJ's conclusion is unsupported by substantial evidence because nearly all the evidence that he described—other than Plaintiff's statement that she gets along well with authority figures—shows that Plaintiff does in fact have difficulty interacting with others.

Moreover, the ALJ cited only Plaintiff's subjective statements and ignored significant objective evidence that arguably supports Plaintiff's limitation in this area. As discussed more fully below, Plaintiff's mental status examinations showed some normal findings, such as a cooperative and friendly attitude, a calm or appropriate mood, normal eye contact, and appropriate dress and grooming. (*See* AR, Doc. No. 7-8, Doc. No. 7-9, Doc. No. 7-10, Doc. No. 7-17, Doc. No. 7-18.) Often, however, Plaintiff's providers also documented abnormalities that included a dysthymic mood, a blunted or flat affect, pressured speech, and poor insight and judgment. In addition, they documented anxious, frustrated, stressed, and/or sad moods during nearly every examination since August 2020. (AR, Doc. No. 7-8 at PageID 562-63, 567-68, 577-78, 582-83, 587-88, 592-93, 597-98, 609-10, 619-20, 624, 629-30, 639-40, 684-85, 689-90, 700-01, 705-06, 710-11, 719-20, 724-25, 946, 957-58, 962-63, 967-68, 972-73; Doc. No. 7-9 at PageID 978-79,

12

984-85, 990-91; Doc. No. 7-10 at PageID 1011-12, 1016-17, 1027-28; Doc. No. 7-17 at PageID 1263-64, 1268-69, 1273-74; Doc. No. 7-18 at PageID 1289-90, 1323-24, 1327-28, 1331-32, 1335-36, 1339-40, 1343-44, 1351-52, 1359-60, 1375-76, 1379-80, 1383-84, 1387-88.) These mood abnormalities could reasonably be expected to have a negative impact on Plaintiff's ability to interact with others. Therefore, the ALJ's conclusion that the evidence supports "no limitation" in the area of interacting with others is unsupported by substantial evidence.

The ALJ also ignored substantial evidence regarding Plaintiff's mental impairments in the RFC analysis. The ALJ provided a detailed summary of Plaintiff's subjective complaints in the disability reports and at the hearing. (Decision, Doc. No. 7-2 at PageID 51-53.) The ALJ then summarized the medical evidence regarding Plaintiff's physical and mental impairments. (*Id.* at PageID 54-61.) But inexplicably, the ALJ's summary ignored almost all of the objective mental status findings in the record. (*Id.*) The ALJ cited to only one examination that showed abnormal objective mental status findings: namely, a primary care visit where Plaintiff was "noted to be anxious." (*Id.* at PageID 60.) And he cited only two examinations—both performed during primary care visits and not during the mental health treatment sessions—where Plaintiff's providers documented normal objective mental status findings. (*Id.* at PageID 54-55.)

The ALJ's analysis did not cite any of the objective mental status findings from Plaintiff's mental health providers in the Meridian Mental Health Services progress notes. Although the ALJ referenced a few of the mental health progress notes in his summary of the medical evidence, he limited his discussion to subjective complaints, reports of daily

activities, diagnoses, and prescribed medications. (Decision, Doc. No. 7-2 at PageID 54-61.) For example, the ALJ acknowledged the diagnoses and medications that Amy Abuasabeh, N.P. documented during a December 2020 medication management visit,[5] but disregarded the mental status abnormalities that Nurse Abuasabeh documented: namely, a dysthymic mood and poor insight and judgment. (*Compare* Decision, Doc. No. 7-2 at PageID 56, *with* AR, Doc. No. 7-7 at PageID 713.)

The ALJ therefore did not discuss numerous mental health records that justify the mental limitations identified by the state agency psychological consultants. For example, the ALJ failed to mention the initial evaluation at Meridian Mental Health Services on August 26, 2020, where Plaintiff reported a history of prior abuse and complained of nightmares, flashbacks, intrusive thoughts, anxiety, a startle reflex, poor sleep, and hypervigilance. (AR, Doc. No. 7-7 at PageID 554.) A mental status examination noted that Plaintiff was calm, cooperative, and friendly, but also documented a blunted affect and a depressed, stressed, and anxious mood. (*Id.* at PageID 554, 557.) In follow-up visits through August 2021, Plaintiff often presented with a cooperative and friendly attitude, normal eye contact, appropriate dress and grooming, and some happy or calm moods; nevertheless, Plaintiff's providers consistently documented anxious, frustrated, stressed, and/or sad mood symptoms on almost every occasion. (AR, Doc. No. 7-8 at PageID 562-63, 567-68, 577-78, 582-83, 587-88, 592-93, 597-98, 609-10, 619-20, 624, 629-30, 639-

---

[5] The ALJ states that this medication management appointment occurred in November of 2020, but the record that the ALJ cites is dated December 2, 2020. (*Compare* AR, Doc. No. 7-2 at PageID 56, *with* (AR, Doc. No. 7-7 at PageID 712-14.)

40, 684-85, 689-90, 700-01, 705-06, 710-11, 719-20, 724-25, 946, 957-58, 962-63, 967-68, 972-73; Doc. No. 7-9 at PageID 978-79, 984-85, 990-91; Doc. No. 7-10 at PageID 1011-12, 1016-17, 1027-28; Doc. No. 7-17 at PageID 1263-64, 1268-69, 1273-74; Doc. No. 7-18 at PageID 1289-90, 1323-24, 1327-28, 1331-32, 1335-36, 1339-40, 1343-44, 1351-52, 1359-60, 1375-76, 1379-80, 1383-84, 1387-88.) The ALJ failed to mention any of these findings.

Indeed, Plaintiff's objective mental status findings were only essential normal during one visit in March 2021. (AR, Doc. No. 7-18 at PageID 1347-48.) Plaintiff's providers documented mood issues and objective examination abnormalities on several other occasions. For example, Nurse Abuasabeh reported that Plaintiff presented with a blunted affect and a depressed mood during a psychiatric evaluation in September 2020. (AR, Doc. No. 7-7 at PageID 604.) Nurse Abuasabeh also noted that Plaintiff complained of poor motivation, poor focus, frustration, agitation, anger, sadness, and anxiety. (*Id.*) In January 2021, Plaintiff's responses to an Adult Needs and Strengths Assessment indicated mild interpersonal problems and emotional dysregulation, as well as moderate to severe depression, anxiety, impulse control, intrusions, and anger control. (AR, Doc. No. 7-18 at PageID 1369.) Plaintiff's provider documented an unremarkable yet anxious mood, a flat affect, pressured speech, and fair insight and judgment. (*Id.* at PageID 1371.)

Further, although Plaintiff stated during a May 2021 medication management visit that her medications were "doing well," Nurse Abuasabeh documented a dysthymic and anxious mood and affect, poor attention and concentration (albeit with intact recent and remote memory), and poor insight and judgment. (AR, Doc. No. 7-10 at PageID 1004.)

15

Plaintiff exhibited an unremarkable mood but a flat affect during an August 2021 mental status examination. (AR, Doc. No. 7-18 at PageID 1284.) The ALJ disregarded all of these findings, too.

In sum, it is true that Plaintiff's mental status examinations showed some normal findings, such as a cooperative and friendly attitude, a calm or appropriate mood, normal eye contact, and appropriate dress and grooming. But Plaintiff's providers consistently documented abnormalities such as a dysthymic mood, a blunted or flat affect, pressured speech, and poor insight and judgment—as well as anxious, frustrated, stressed, and/or sad moods. The ALJ omitted this evidence not only from the RFC analysis, but also from the "Paragraph B" analysis at Step 3. (Decision, Doc. No. 7-2 at PageID 48.)

Based upon its review of the administrative record, the undersigned Magistrate Judge concludes that the ALJ's summary of the evidence does not acknowledge or address a significant amount of evidence that supports Plaintiff's mental health complaints. The Court recognizes that the ALJ need not discuss each and every piece of evidence and finding in the record. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014). Nevertheless, the ALJ's "factual findings as a whole" must show he "implicitly resolved the conflicts in the evidence." *Id.*

Here, the ALJ's failure to acknowledge nearly any of the abnormal mental status findings leads the Court to conclude that the ALJ did not resolve the conflicts in the evidence. In addition, the ALJ's apparent failure to consider significant evidence that contradicts his conclusions signifies an impermissibly selective review of the record. *See Gentry*, 741 F.3d at 723-23 (citing *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435

16

(6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports")). For both reasons, the undersigned Magistrate Judge concludes that the ALJ's factual findings regarding the consistency factor are not supported by substantial evidence.

### 3.     *The ALJ's error is not harmless.*

Defendant argues that any error in the ALJ's evaluation of the state agency psychological consultants' opinions is harmless. Specifically, Defendant contends that "[e]ven if Plaintiff had additional mental limitations, she would still be able to perform other work. The vocational expert testified that there would be jobs available for an individual limited to understanding, remembering, and carrying out simple instructions; and occasional interaction with the public, coworkers, and supervisors." (Mem. In Opp., Doc. No. 10 at PageID 1446, n.9.) This assertion is not well-taken because the vocational expert did not testify that jobs would be available to an individual with the ALJ's RFC ***and*** the additional limitations opined to by the state agency psychological consultants.

The ALJ posed the following hypothetical question to the vocational expert at the January 2022 hearing:

> [L]et's assume we have a hypothetical individual of [Plaintiff's] age, education and work experience and for this hypothetical individual can occasional – I'm sorry, can perform light work as defined in the regulations. Occasionally climb stairs and ramps, no climbing of ladders, ropes, and scaffolds. The hypothetical individual can occasionally balance to define some of the characteristics of occupations of the [Dictionary of Occupational Titles] with occasional stooping, kneeling, crouching, and

crawling. But this individual should avoid concentrated exposure to dangerous machinery and unprotected heights. This hypothetical individual can understand, remember to carry out simple instructions. Can engage on an occasional basis with – in terms of interaction with the general public, coworkers and supervisors.

(AR, Doc. No. 7-2 at PageID 100.)

The vocational expert responded that such an individual would be unable to perform Plaintiff's past relevant work but could perform the following light, unskilled jobs: Routing Clerk, Dictionary of Occupational Titles (DOT) code 222.687-022, approximately 98,000 positions nationally; Parking Clerk, DOT code 209.587-034, approximately 126,000 positions nationally; and Collator Operator, DOT code 208.685-010, approximately 32,000 positions nationally. (*Id.* at PageID 101.) The vocational expert further testified that if the hypothetical individual could perform only sedentary work—with all other limitations remaining the same—such an individual could perform the following sedentary, unskilled jobs: Toy Stuffer, DOT code 731.685-010, approximately 24,000 positions nationally; Final Assembler, DOT code 713.687-018, approximately 22,000 positions nationally; and Document Preparer, DOT code 249.587-018, approximately 26,000 positions nationally. (*Id.* at PageID 101-02.)

The ALJ posed an additional hypothetical question to the vocational expert. (AR, Doc. No. 7-2 at PageID 103.) The ALJ referenced the first hypothetical but substituted the mental limitations that he posed in that hypothetical with the sole mental limitation that he included in the RFC:

I'm going to circle back to the hypothetical. If – I'm looking at my notes – if the hypothetical individual – let's just say – I'll just give you the hypothetical. Its [sic] secretarial work, real light work is where it started

18

> with everything being the same what are the mental limitations if we were simply just to say that this hypothetical individual could – would have no requirements to maintain a production rate pace, with that being the only limitation. So, you could strike the – like the other limitations, mental limitations, as if like no requirement to make a production rate pace such as in assembly line work.

(*Id.*) The vocational expert responded that the hypothetical individual could perform all three of the light jobs provided in response to the first hypothetical. (*Id.*) The ALJ also asked the vocational expert whether the individual could perform the sedentary jobs with this additional mental restriction. (AR, Doc. No. 7-2 at PageID 103). The vocational expert testified that the Document Preparer and Toy Stuffer jobs would remain, but that the hypothetical individual would be unable to perform the Final Assembler job. (*Id.* at PageID 103-04.)

Thus, the first hypothetical included two mental limitations ("can understand [and] remember to carry out simple instructions" and "can engage on an occasional basis with – in terms of interaction with the general public, coworkers and supervisors"), and the second hypothetical omitted those two mental limitations and included a third mental limitation (no "production rate pace"). Therefore, the ALJ ***did not ask*** the vocational expert to consider the cumulative effects of the mental limitations identified in each hypothetical question. Neither the parties nor this Court can determine whether the representative jobs and job numbers described in the vocational expert's testimony could apply to an individual with all three of these mental limitations. [6] Defendant's argument

---

[6] The Court notes that the state agency psychological consultants opined that Plaintiff could relate on only a "***superficial*** and ongoing basis" with coworkers and supervisors. (AR, Doc. No. 7-3 at PageID 124,

therefore "invit[es] this court to perform a duty which is reserved to the ALJ. It is the ALJ, not the court, who must determine what jobs can be performed by a plaintiff in light of her limitations." *Runyon v. Comm'r of Soc. Sec.*, No. 2:20-CV-3820, 2021 WL 3087639, at *6 (S.D. Ohio July 22, 2021) (Vascura, M.J.), *report and recommendation adopted*, No. 2:20-CV-3820, 2021 WL 3489615 (S.D. Ohio Aug. 9, 2021) (Watson, D.J.) (citation omitted). For these reasons, the ALJ's error is not harmless.

There is another reason why the ALJ's error is not harmless. As discussed above, the ALJ's factual findings regarding Plaintiff's mental impairments are not supported by substantial evidence. Because the Court cannot discern whether the ALJ ignored, rejected, or misconstrued a substantial body of medical evidence that supports Plaintiff's claims of disability, the Court cannot meaningfully review the ALJ's decision. *See Hurst v. Sec'y of Health and Hum. Servs.*, 753 F.2d 517 (6th Cir. 1985) ("It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review.") (citation omitted). An ALJ's error cannot be excused as harmless if it prejudices the claimant on the merits or deprives him of substantial rights. *Rabbers*, 582 F.3d at 654. Here, the Court finds that the ALJ's error was not harmless because it prejudiced Plaintiff on the merits. Therefore, reversal and remand is warranted.

---

156-57) (emphasis added.) But the hypothetical posed by the ALJ included a limitation for **occasional** interaction with the general public, coworkers, and supervisors. (AR, Doc. No. 7-2 at PageID 100) (emphasis added.) Because the VE's testimony did not consider the cumulative effects of the RFC mental limitation and **any** social limitation, the Court need not address whether this distinction is material.

## VI. REMAND

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746.

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, the undersigned Magistrate Judge concludes that Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to the opinion evidence and Plaintiff's mental impairments, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim

under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1.   Plaintiff's Statement of Errors (Doc. No. 8) be GRANTED;

2.   The Court REVERSE the Commissioner's non-disability determination;

3.   No finding be made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4.   This matter be REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5.   This case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the

objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).